UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JO ANNE KOLENKO-GERBEC,

                Plaintiff,

   v.                                        **DECISION AND ORDER**
                                                     13-CV-430S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1.     Plaintiff Jo Anne Kolenko-Gerbec challenges an Administrative Law Judge's ("ALJ") decision, dated September 21, 2011, wherein the ALJ determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act.  She now contends that the determination is not based upon substantial evidence, and reversal is warranted.

2.     Plaintiff protectively filed an application for a period of disability and disability insurance benefits on February 27, 2009, alleging a disability beginning on September 17, 2007. The application was initially denied on June 1, 2009, and Plaintiff was granted a hearing on that denial. She testified before the ALJ on October 4, 2010, and again on April 15, 2011, at which time a vocational expert also testified.  The ALJ issued a decision denying Plaintiff's application for disability benefits on September 21, 2011.  The Appeals Council denied Plaintiff's request for review on February 28, 2013, rendering the ALJ's determination the final decision of the Commissioner. Plaintiff filed the instant action on April 29, 2013.

3.     Plaintiff and the Commissioner each filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Judgment on

the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert denied*, 459 U.S. 1212 (1983).

5. To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might

justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work

experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since September 17, 2007, her asserted onset date (R. 31);[1] (2) Plaintiff had several severe impairments including degenerative disc disease of the cervical spine, a disc herniation of the thoracic spine, occipital headaches and cervicalgia, and an adjustment disorder with mixed anxiety and depressed mood (R. 31-32); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment under the regulations (R. 32-40); (4) Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions, including sitting or standing exclusively for periods of time totaling 2.5 hours, but she could stand and/or walk for about six hours total in an eight-hour workday with normal breaks (R. 40-46); and (5) although she could not perform her prior work as a dental hygienist, considering her age, education, experience, and RFC, there were sufficient jobs in the national economy that she could perform. (R. 46-48.)

10. Plaintiff first contends that the ALJ failed to give controlling weight to her treating sources. A treating physician's opinion is generally given more weight than that of a consultative examiner, and in fact will be given controlling weight if it is "well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial

---

[1] Citations to the underlying administrative record are designated as "R."

evidence in [the] record." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(2)). Plaintiff argues that, here, the ALJ ignored treating physicians Dr. Gibbons' and Dr. Capicotto's findings that Plaintiff had degenerative disc disease and herniated discs in four areas resulting in a spinal injury which significantly affected Plaintiff's ability to work.

Contrary to this argument, however, the ALJ considered the MRI findings of disc herniations and protrusions noted by Dr. Gibbons and Dr. Capicotto in determining that degenerative disc disease was one of Plaintiff's severe impairments. (R. 31-32, 34, 375, 380, 392.) Notably, Dr. Gibbons' concluded that the MRI films reviewed in 2007 showed little progression at the C4-5 level, which "overall look[ed] reasonably good in terms of disk degeneration and no clear evidence of disk herniation." (R. 392.) In later examinations, an increase in activity was in fact recommended. (R. 395, 420-21.) Further, it is unclear what opinion of Dr. Gibbons the ALJ failed to credit when the decision referenced this physician's relatively mild examination findings. (See R. 34-35, 393 (Plaintiff did not have "any true radicular symptoms" and that a "brief trial of collar immobilization" rather than surgical intervention was recommended for her mild headache symptoms).)

In contrast with Dr. Gibbons, Dr. Capicotto's treatment records contain numerous conclusory assertions that Plaintiff had either a marked or moderate permanent disability and, for a period of approximately 6 months, was totally temporarily disabled. (R. 376, 380, 383, 386, 413, 430, 434, 436.) However, a statement that a claimant is or is not disabled is not a "medical opinion" entitled to any special significance, but is instead a determination within the exclusive purview of the Commissioner. 20 C.F.R. § 404.1527(d)(1),(3).[2]

---

[2] At the time of the ALJ's decisions, these provisions appeared at subsections (e)(1) and (3).

Further, specific functional limitation information was requested from Dr. Capicotto (R. 403-09), however the records submitted in response contain almost no specific limitations. The "lifestyle modifications" that are mentioned, and noted in the ALJ's decision, are relatively mild, such as an advisement that Plaintiff "be careful with bending, lifting, twisting and turning," as well as avoiding rotary movements such as sweeping or vacuuming. (R. 35, 390.)

      Plaintiff is correct that the ALJ does not reference Dr. Capicotto's specific 2009 opinion that Plaintiff's acute spinal injuries had "developed into a chronic condition causing her moderate to moderately severe chronic pain and precluding her from returning to the work force." (R. 434.) As noted, however, Dr. Capicotto did not relate Plaintiff's subjective pain complaints to specific functional limitation findings. Further, the ALJ did expressly consider Plaintiff's claimed physical limitations from pain, and found that these claims were inconsistent with those activities she admits to engaging in daily, as well as unsupported by the normal results of an October 2010 EMG/NCV study. (R. 45, 46, 76, 246-48.) The ALJ therefore did not err in giving greater weight to the more benign objective medical evidence and examination findings.

      11.    Plaintiff further argues that the ALJ's specific RFC findings were inconsistent with the job positions she found to be capable of performing, such as cashier, gate guard, or counter clerk. Initially, there is no discrepancy between the RFC determined by the ALJ and the hypothetical presented to the vocational expert for consideration. (R. 40, 115-16.) Further, the vocational expert explained that work could be considered "light not because of lifting, which might be up to 20 pounds with the lift criteria, but is light because of the time [an employee] would spend on her feet," as was the case with Plaintiff. (R. 116.) The expert determined that a viable job for Plaintiff would not require a sit/stand option because

she "could be on her feet for up to six hours of an eight-hour day" as stated by the ALJ. (R. 116, 119.) Similarly, although only a total of five hours per work day could be spent either exclusively standing or exclusively sitting, the vocational expert considered Plaintiff's unlimited ability to walk in determining that a job in which she could move around the workstation would be suitable. (R. 119-20.) The vocational expert confirmed that all the jobs he testified could be performed by someone with Plaintiff's limitations had such a workstation. (R. 120.) Finally, as noted by the ALJ, the vocational expert took into account the fact that Plaintiff would not be suited to every cashier or gate guard position that fell within the broader Dictionary of Occupational Titles definition, and reduced the number of available jobs accordingly. (R. 47, 121-23.)

12.    Plaintiff's final argument is that the ALJ improperly looked unfavorably on Plaintiff's receipt of unemployment benefits for the year following her asserted onset date. (R. 45, 104.) The ALJ found this significant because "[t]o be eligible for [unemployment benefits], the claimant had to have sworn that she was ready, willing and able to work" during that time. (R. 45.) As Defendant asserts, courts in this Circuit have held that an ALJ is entitled to consider such a certification when evaluating a claimant's credibility. Felix v. Astrue, No. 11-CV-3697, 2012 WL 3043203, *10 (E.D.N.Y. July 24, 2012) (collecting cases).  The ALJ's limited reference to Plaintiff's unemployment benefits was for just this proper purpose.  (R. 44-45.)

13.    For the foregoing reasons, and upon a review of the record as a whole, the Court concludes that the ALJ's determination is supported by substantial evidence. Defendant's Motion for Judgment on the Pleadings is granted.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: September 13, 2014
       Buffalo, New York

                                                          /s/William M. Skretny
                                                          WILLIAM M. SKRETNY
                                                          Chief Judge
                                                          United States District Court